And we'll move to the next case. Carrizosa v. Chiquita Brands. Marco Simons is here for the appellants. Michael Chiaffi is here for the appellees. And Mr. Simons, you may begin. Thank you, Your Honor. Good morning. May it please the Court, my name is Marco Simons, arguing for the plaintiffs' appellants here who are residents of Colombia bringing claims for severe human rights abuses. They're suing Chiquita over its admitted illegal financing of paramilitary death squads, which led to a U.S. criminal conviction. This appeal is about whether these plaintiffs will continue to have their identities, as well as their addresses, phone numbers, email addresses, and other private information protected from public disclosure. Colombia remains an extremely dangerous place for people raising claims of human rights abuse, with over 100 people murdered last year for their roles in trying to defend human rights. I'd like to make two main points this morning. First, in removing these protections from the protective order, the district court should have required defendants to show good cause for modification rather than requiring plaintiffs to show good cause to maintain an order that is already issued. And second, regardless of the burden, the district court also abused its discretion in ignoring the evidence and arguments submitted by the plaintiffs. Before getting into these points, however, I'd like to briefly touch on appellate jurisdiction. Jurisdiction under the collateral order doctrine is firmly established here under this court's decision in Plaintiff B v. Francis and the old Fifth Circuit's decision in Doe v. Stiegel. These cases recognize that the disclosure of identity information implicates important rights, it is conclusive once it has occurred, and it is effectively unreviewable afterward. Stiegel, in particular, establishes that jurisdiction is present even when the appeal is from the denial of protection. This is Judge Marcus. Let me ask you a question about whether the issue is collateral or not, dealing with anonymity. As I understand it, there are eight plaintiffs before this court now, seven plus Jane Doe, 46. Is that right? Those are the parties before us on this anonymity question. Do I have that correct? I believe there are five anonymous plaintiffs before the court. There were 13 Bellwether plaintiffs to begin with. That's right. Five proceeded under their true name, which got you to eight. There are three that are represented by different counsel who opted not to appeal. Right, but I'm just trying to figure out. So there are eight before us now, including Jane Doe, 46? If you include the three who opted not to appeal. Okay, then if you knock them out, how many are before us? There are five, Your Honor. Okay. Now, a summary judgment order was entered as to at least four of those five, right? Yes, Your Honor. Could you not raise the claim as to those four when you take up the summary judgment issue, which is now on appeal? If the court wants to merge the issue with the summary judgment appeal, I suppose it could do so. It's collateral to it because it was conclusively determined prior to the determination. No, I agree that it's collateral, but I'm simply saying it's something that whatever panel hears the case on summary judgment could consider that. But that wouldn't affect Jane Doe, 46 would probably be before us anyway, and she would have no vehicle to take an appeal but for this issue in this court. Correct. Do I have that correct? That's right, Your Honor, and that's because Jane Doe, 46 was not subject to that summary judgment. All right. Thank you. Getting into the merits of it, because the protections were enshrined in a protective order, good cause was required to modify that protective order. There's no dispute that when a protective order is issued on good cause, good cause is required to modify it, and there's no dispute that the district court here did not require defendants to show good cause for modification, but instead placed the burden on plaintiffs to show good cause to continue the protection. Did the district court require any showing of good cause on the front end when it entered the protective order? I thought it was a stipulated order. Each side submitted materials, and the court fashioned its order without really a debate. Have I misapprehended what the district court did? It was not a stipulated order, Your Honor, because each side did submit different versions of the order, and, in fact, it was only plaintiffs' version of the order that included specific protections for pseudonymous plaintiffs. And in submitting their version of the order, the plaintiffs specifically cited the court's recent foreign nonconvenience decision as the basis for those protections, and that decision recognized that litigating these claims in Colombia would be, quote, a very dangerous proposition, partly because the plaintiffs, quote, would be required to file civil claims under their own names in Colombia. And then the district court issued the protective order, largely adopting the plaintiffs' version of the protections for the plaintiffs under pseudonym, and expressly stated that it was issuing the protective order under Rule 26C. Now, under this circuit's case law, there is no ability to issue a protective order under Rule 26C without finding good cause. And so I would agree the issue was minimally litigated, but it was minimally litigated because it was obvious to all parties concerned that after the court's foreign nonconvenience decision, which expressly denied dismissal based on the dangers of plaintiffs litigating in Colombia, that it was obvious that protection for these plaintiffs was necessary. And so just because it was obvious shouldn't be any basis to determine that good cause wasn't actually present at that time. What's your response to Chiquita's claim that your clients only offered vague and generalized fears of harm? Yeah, I'll move into that, Your Honor. First, I would say if the court misassigned the burden, then none of that matters because it's an abuse of discretion as a matter of law. However, if we're getting into the merits of it, that's simply not true. We submitted extensive evidence, evidence of a character that this court has considered on previous cases. In both Plaintiff B and in Stiegel, for example, the court there relied on expert declarations and on hearsay and newspaper articles to determine that there was a risk to the plaintiffs of disclosing their identities. In this case, we submitted exactly the same kind of information to show that the risks in Colombia persist. Part of what the district court suggested was that we had not offered a logical reason as to why bringing these claims against Chiquita in the United States would put our clients at risk in Colombia. But that's simply not true. The district court simply ignored the reasons and the evidence that had been submitted. Part of that logical reason was, in fact, recognized by the district court in its own form nonconvenience decision. The court previously recognized that plaintiffs could face retaliation from people in Colombia who have not participated in the peace process and who could be criminally implicated by these plaintiffs' testimony. We submitted evidence that claimants in Colombia who are claimants in human rights cases are at extreme risk and that there have been public death threats by neo-paramilitary groups, successors to the groups that Chiquita funded and that killed our plaintiffs' family members, public threats against victims' committees in the very regions of Colombia where our plaintiffs live. Counsel, this is Judge Bush. What about the evidence, though, of the plaintiffs who have proceeded under their own names and not anonymously, I guess, for 10 years now, and apparently there's no evidence that any of them have had any threats or violence against them? Wasn't the district court entitled to rely on this as the basis for a finding here that there was no good cause shown by the anonymous plaintiffs, given that the only comparators that are in the case, they have not been harmed in any way? Yes, so that's flawed in two ways, Your Honor. First, because it's simply not true that nobody produced evidence that they had been subjected to threat or attack. In fact, one of the plaintiffs at issue in the Bellwether trials did submit evidence that she had been subjected to attack by the very same death squad group that had issued the public threat that I referenced earlier. But the real question here is not the hundreds of plaintiffs proceeding under their own names, although they are a minority of the plaintiffs in this case. The great majority of plaintiffs have been. Let me ask you, are those individuals from a different region? Is there any way to distinguish where they are in Columbia from the ones that are anonymous? I don't have the details of all of the plaintiffs here, but I will say that different plaintiffs may have made different decisions based on their own assessment and their own personal situation in terms of how exposed to threat they are. But my real point here is that there's only five named plaintiffs that are proceeding as Bellwether trial plaintiffs. The vast majority of these plaintiffs proceeding under their real names have not been deposed, have not given any testimony. We don't actually know if they've faced any threats because they haven't been deposed, but also there is no great reason for them. Chiquita, this is Judge Wilson. Chiquita says in his brief that many of the appellants did not even know they were proceeding under a pseudoname originally and didn't express any concern that the litigation would put them in any harm. That's not true, Your Honor. Everyone who was deposed testified that they believed that they were under threat. If you read the full depositions and not just the snippets of confusing exchanges that Chiquita submitted, I think that's very clear. But out of the five plaintiffs that are proceeding to trial, one of them has faced attack, and that's the number that matters here. It's a small number of plaintiffs that are going to be high profile in the trial context, actually giving evidence that could implicate criminals in Columbia, that could lead to further investigations, that could put people behind bars, that could give the people in death squads and people reporting them a very strong reason to retaliate against these plaintiffs. I'll reserve the rest of my time for rebuttal. Thank you. Well, I'd like to explore this issue just a bit further if I can. This is Judge Marcus, and I want to drill down still further on the question that Judge Bush was asking you. The district court says, among other things, references the fact that the comparative experiences of named and unnamed plaintiffs, given that hundreds of other ATS plaintiffs have prosecuted the names under their true names since their complaints were filed over ten years ago, were without incident. Was the district court free to rely on that without abusing its discretion in reaching the conclusion that it did? No, Your Honor, for two reasons. First, because, again, the burden was on defendants to show a good cause for modification, and the district court expressly did not do so. Let's assume for the purposes of my question that the burden rests with you, not with them, because it was more in the form of a stipulation than an argument based on good cause shown to begin with. So let's assume you had the burden of proof. Understood, Your Honor. Did the district court rely upon the fact that basically, save for the single-named Monterey Harris plaintiff, no one had a problem and there were scores, if not hundreds, of plaintiffs whose names were disgorged? No, for three reasons. First, because we don't actually know the situation for the vast majority of those plaintiffs. They were never deposed. They were never asked about whether they were under threat, whether they'd faced any attacks or anything like that. Second, because they're not similarly situated. These five plaintiffs under pseudonym are proceeding to trial where they are going to give evidence in a very high-profile trial that is closely watched in Columbia. Those hundreds of other plaintiffs were not. They are not under the same microscope. And third, as mentioned earlier, we don't know what kind of self-selection took place in terms of which plaintiffs decided to proceed under their own names versus which plaintiffs decided that they could only proceed safely using pseudonyms. And one more thing I would add, Your Honor. The legal standard cannot be that some of the plaintiffs in the case have to have actually been attacked in order to show that it's risky for others to disclose their identities. That is not the standard that's ever been applied by this court. What this court has said before is that there simply needs to be a real risk of danger, and that is amply shown by the evidence submitted by the plaintiffs here. You don't have to have the actual murder of a plaintiff in order to show that protection is warranted. Thank you, Mr. Simons. And we'll now hear from Mr. Chiaffi. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Judge Marcus, I'd like to answer your question based on what's in the record, actually in the record as opposed to counsel's representation of the record. What the record actually shows is that all the plaintiffs who were subject to this appeal were deposed. Those deposition transcripts are at the appendix 7210 through 7239. Each was directly asked to describe a specific concrete and personal threat related to their status as litigants in this case. The record is unambiguous. None could do so, and we urge the Court to go look at this record as it exists. So, for example, several plaintiffs, Jane Doe 7, Lana Perez 49, Jane Doe 46, flat out denied being threatened or even knowing that pseudonyms were being used. Let me ask, this is Judge Wilson asking a question. Was this before or after the prior forum nonconvenience order? After, Your Honor. So these depositions were, so the District Court ruled on the forum non, then lifted the stay of discovery, and these depositions were taken after that. The problem that I have though is the District Court's order is pretty sparse, and it doesn't give us very much to review. It's less than a page. The analysis is sparse. It's a complex issue, and there is evidence supporting anonymity, and the Court doesn't really explain what caused it to change its mind. Respectfully, Judge Wilson, I disagree. Let me continue with what's actually in the record and how the District Court did, in fact, I think, very intelligently dealt with balancing this evidence. And, of course, in balancing the evidence, the Court, under an abuse of discretion standard, is to be given great leeway, and only if he made a clear error in balancing the evidence may this Court reverse. And even if, under the jurisprudence of the Eleventh Circuit, the Court will affirm the District Court's evidentiary balancing, even if the panel would have gone the other way. But there was ample evidence for the Court to decide the way it did, and Judge Maher explained it. So in addition to the evidence I was just reciting, the undisputed record shows, as I think Judge Marcus was discussing with counsel, that hundreds of plaintiffs in this case have been proceeding under their own names for more than a decade without harm to anyone, without any evidence in the record that one of them, not one of them, have ever been threatened because of their status as litigants in this case. The undisputed record also shows that two paramilitary leaders who are alleged to be, paramilitary leaders alleged to be the source of these threats, they were deposed and specifically asked if they had any reason to harm plaintiffs because they were suing Chiquita for $18 billion in the United States. They answered no. There's no evidence in the record that, first of all, identifies any paramilitary figure at all who threatened or harmed any plaintiff in this case, and there are 7,500 of them. But this unrebutted evidence, well, we would submit to the Court that this unrebutted evidence alone allows Judge Maher to decide well within his zone of choice with respect to the evidentiary record. But the Court did consider all of plaintiff's evidence, and Judge Wilson specifically in terms of the rationale of the Court, and now I'm looking at his order, which is at the appendix at 4289, and on pages three and four of its order, the District Court accurately summarizes all of the plaintiff's evidence as showing that Columbia remains a violent country and culture. He says that, and he goes on to say... I guess the problem that I have is the Court does a complete about-face without explaining why, and on top of that, the Court's order doesn't identify any prejudice at all to Chiquita, and Chiquita doesn't even argue prejudice in its brief. It just intends that, well, judicial openness carries the day. Where's the prejudice to Chiquita that was identified by the Court? Let me answer that directly, Your Honor. The factor of unfairness to the defendant we would submit to you is not required here because there was no showing of harm at all in the record for the reasons I just articulated to you, and I'll cite the Court to Doe v. Scheele, which is a 2019 decision. So the Court said there that unfairness to the defendant was not required because there was no showing of harm. But, Your Honor, there is substantial harm to the defendant here, and that arises out of the fact that this Court has noted from MSU forward, MSU being the first decision about anonymity in this Court, that there is a constitutional presumption of openness in judicial proceedings and basic fairness to the defendant that requires plaintiff accusers to proceed under their real names. This is not some sort of empty platitude or window dressing. Here's the bias. Here it is. There's a presumption of openness. Here it is, Your Honor. Pseudonymity imbues a plaintiff's case with a tremendous aura of seriousness, merit, validity, credibility, not just in the eyes of the trier of fact, but we would submit to you in the eyes of the public. In this case, dozens of legal complaints and dozens of news articles about the claims of Jane and John Doe versus Chiquita and its individual officers have been made public. They contain horrendous, incendiary allegations against the defendants. Pseudonymity gives these allegations an aura of validity and believability. None of this is in the District Court's order. Your Honor, it's part of the jurisprudence of the court, going back to SMU, where the court said that anonymous accusations would cause damage to the good names and reputations of the defendants. I would submit to you under Doe v. Shealy, the District Court was not required to reach the factor of unfairness to the defendant because there has been no threshold showing of specific harm to these plaintiffs. And what the harm was, was all the evidence of the plaintiffs goes to the issue of this general culture of violence in Colombia and that human rights defenders in Colombia and social leaders may be subject to increased violence. What the court said at page 3 and 4 of its order is that these generalized threats to human rights defenders do not prove that the plaintiffs themselves faced a personal and specific risk of harm by virtue of their status as litigants. As the District Court noted, and this is a pure application of evidence law to which the court, this court, the circuit court, should give great deference. What the District Court said is that there's no logical connection, no connected relevancy between the plaintiff's hearsay evidence and the fact of consequence they had to prove, specifically threats of real harm to them. Not threats generally, because Colombia is a violent country, not threats to human rights defenders or social leaders, but threats to them as litigants in this case. And that's what they could not prove, and that's what the District Court ruled. And he was well within his sphere of choice. And as this court said many times, the District Court is permitted a zone of choice. And the District Court could go different ways. But the evidence we would submit to Your Honor is absolutely compelling, that the evidence of harm to any specific plaintiff as a result of their status as a litigant here does not exist. And in fact, all the specific evidence, including their own deposition, goes the other way. Now, I also heard in Judge Wilson, in your question, is that you were somehow concerned about, he made a different decision five years ago in the FNC decision. In that case, there was a different issue. The issue was, is Colombia a viable forum, is an adequate forum to proceed? Not whether the United States is an adequate forum. And in fact, the court found that Colombia was not, and allowed them to proceed here in the United States. Two different issues. There's no evidence, and this is why Judge Marra decided the way he did on the pseudonym question. There's no evidence in this case that proceeding in the United States as litigants will put these plaintiffs in an enhanced fear of harm. And that's the reason, the two decisions are concurrent. Let me ask you a question. This is Judge Marcus. Yes, sir. About the forum nonconvenience ruling. The district court concluded that Colombia was an inadequate forum. Yes, sir. And that's a big deal, to suddenly say, we're going to try the case here. What was the foundation for that? What was the basis for the district court ruling? The basis of that ruling, it was that Colombia, and this is no newsflash to anyone, that Colombia is a violent country, a culture of violence, a culture of impunity, which made litigation difficult. Didn't he say more than that? Wasn't it more than that? As a general and abstract matter, Colombia was a violent place. Didn't he tie it specifically to this claim by these plaintiffs in general? I think that's true. Yes, sir. What did he say about why the violence was a particularly compelling reason for this case involving these parties to litigate this matter in the United States rather than in the Colombian court? I'm not quite sure what the court is searching for, Your Honor. Wasn't he concerned about the danger and risks to the parties here? Wasn't that part of why he reached the conclusion he did inform nonconvenience, or did I misapprehend that? Well, I think he, yes, he said because of the general culture of violence in Colombia, and the fact that the issues in this case arose out of a civil war caused by warring factions of narco-terrorists, that that could cause harm to individual plaintiffs. But that harm, we would submit to the court, does not exist with the litigation in the United States, and the two decisions are not inconsistent. Thank you. Your Honor, I'd like to address the first assignment of error, which is this issue of the court allegedly applying the wrong legal standard. The unambiguous record proves that that assertion is flat out wrong. There was never, never in this case, a showing of good cause by the plaintiffs to proceed under pseudonym. As we explained in our brief, the plaintiffs began using pseudonyms through two devices. First, the ex parte orders, and they are at appendix 5179 and 5190. And secondly, by unilaterally amending complaints to add pseudonyms without court authorization. Thus, there was never a good cause showing for the use of pseudonyms, and the court appropriately placed the burden on the plaintiffs to demonstrate entitlement to pseudonyms. This is Judge Wilson. FTC versus AbbVie, we said that once a party establishes good cause for a protective order, the party seeking to modify the protective order bears the burden of supplying good cause for the modification. The answer to that, I would say, that holding is not relevant here because the entitlement to proceed anonymously did not arise under the protective order. The district court explicitly held in its order denying the stay, and this is at appendix 4405, that the protective order did not. May I finish answering, Your Honor? You may. The court specifically held that the protective order did not rule upon or re-examine the issue of any plaintiff's entitlement to proceed under pseudonym in the first place. In that order, again at 4405 of the appendix, Judge Maher explained that the question of entitlement to anonymity was first framed and litigated under defendant's January 2019 motion to preclude. So this argument that somehow the entitlement to proceed anonymously arose under the protective order is absolutely not true as a matter of the unambiguous record, and we submit to you that as a result of this record, it was incumbent on the plaintiffs to meet their burden of entitlement to anonymity. All right. Thank you, Mr. Chiaffi.  Mr. Simons, you reserve some time for rebuttal. Thank you, Your Honor. A couple of brief points. First, it is simply untrue that this did not arise under the protective order. We are fighting today over the district court's modification of the protective order. It is only the protective order that prevented defendants from disclosing the true names of the plaintiffs as soon as they obtained them in discovery. So while we may have been proceeding under pseudonym prior to the issuance of this protective order, the protective order was issued at the beginning of discovery so that when defendants learned the true names and other information, they were not permitted to simply go out and publicize those the next day. So, of course, we're fighting over the protective order, and that's what is at issue here. And, in fact, this case demonstrates why the good cause for modification should be required. Because what happened here was defendants filed their surprise motion to remove the anonymity protections in the run-up to summary judgment. We responded to their motion responding to each specific point that they raised, which was primarily about change conditions in Columbia since the forum nonconvenience ruling. And we amply demonstrated that conditions have not changed in any material way, and if anything, they've gotten worse. The district court then said we had not met our good cause burden. That was pulling the rug out from under us because we believed that we were responding to a motion that had been made, not that the burden was on us to establish the need for protection that had been granted years before. Second, counsel focused on the notion of a, quote, specific, concrete, and personal threat to these plaintiffs. That is not the standard, Your Honor. If you look at the court's reasoning in the Plaintiff B case, there was no specific party that was identified that was going to, you know, access the pornographic images of the underage plaintiff, that a specific party hadn't been identified there that had, you know, threatened to embarrass or stigmatize that plaintiff. Instead, the court's ruling was based on expert evidence and its own common sense about what was likely to happen to this type of plaintiff. And the same reasoning underlies the extensive provisions in Florida law and other states regarding protection of, say, sexual assault victims in criminal prosecutions and such. It is perfectly permissible to make a categorical assessment that this type of plaintiff, this type of party, is under threat based on the circumstances and based on the experience of similarly situated individuals. Third, counsel suggested that the district court's foreign nonconvenience order was based on the general culture of violence in Columbia and that that's also the evidence that plaintiffs submitted in connection with this motion. That is simply not true. We submitted expert declarations and we submitted reports of human rights organizations and news organizations, letters from members of Congress, these sorts of things that specifically identified the threats to people participating in human rights cases. And that's where the fundamental inconsistency between both the foreign nonconvenience decision and our evidence on the one hand and the district court's order here on the other hand comes up. The district court's order said we had not shown a logical connection between our participation in this case here and threats of violence in Columbia. But the foreign nonconvenience decision recognizes exactly that connection where it says that the plaintiff's fears about retaliation from current or former members of paramilitary groups operating outside the justice and peace process are reasonably justified. And that the litigation was dangerous regardless of whether paramilitary figures were directly implicated in the litigation. That's at pages 1962 to 1963 of Plaintiff's Appendix. If the panel has no further questions, thank you. All right, thank you Mr. Simons and Mr. Schiaffi.